**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**

| | | |
|---|---|---|
| GABRIELLE HARPER,<br><br>*Plaintiff*,<br><br>vs.<br><br>MILWAUKEE REPERTORY THEATER, INC.,<br>Serve: Rachel Nielsen, Registered Agent<br>108 E. Wells Street<br>Milwaukee, WI 53202<br><br>*Defendant*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. |

## COMPLAINT

For her Complaint against Defendant Milwaukee Repertory Theater, Inc., ("Milwaukee Rep"), Plaintiff Gabrielle Harper states as follows:

## PARTIES

1. Plaintiff Gabrielle Harper is a former employee of the Milwaukee Rep, where she worked as a Company Manager from November 2024 until her termination in March 2026. Harper resides in Pfafftown, North Carolina

2. Defendant Milwaukee Rep is a corporation organized and existing under the laws of the state of Wisconsin, with a principal place of business in Milwaukee, Wisconsin. Milwaukee Rep can be served through its registered agent, Rachel Nielsen, at 108 E. Wells Street, Milwaukee, Wisconsin 53202.

## JURISDICTION AND VENUE

3. Plaintiff's claims are brought pursuant to the Americans with Disabilities Act, as amended ("ADA") 42 U.S.C. §§ 12101, *et seq.*, and the Family Medical Leave Act ("FMLA"), 29

U.S.C. §§ 2601, *et seq.* This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331.

4. The venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

## FACTUAL ALLEGATIONS

5. In October 2024, Plaintiff began working for Defendant Milwaukee Rep as a Company Manager.

6. In late May 2025, Plaintiff had a performance review through a program used by the Milwaukee Rep called ThriveSparrow 360, designed to give a holistic look at employee performance.

7. As part of the evaluation, Plaintiff gave herself a self-assessment, requested feedback from coworkers, and received feedback from her supervisor, Ryan Looke.

8. Plaintiff received a "Meets Expectations" review, which was accompanied by a bonus that she received later that summer.

9. Also in May 2025, Plaintiff talked with Looke about her mental health condition and her need for therapy.

10. In the Fall of 2025, Plaintiff's supervisor was discussing expanding her department from two employees (one full-time and one part-time) to three (two full-time and one part-time), in acknowledgement of the high workload being a lot for two employees.

11. In December 2025, Plaintiff's department at the Milwaukee Rep was reduced from two employees down to one when one of Plaintiff's coworkers was promoted out of the department.

12. This change in personnel had the effect of substantially increasing Plaintiff's already high workload and exacerbating her preexisting anxiety.

13. In early January 2026, Plaintiff spoke with Looke about the spike in her anxiety.

14. On or around January 16, 2026 Plaintiff suffered a panic attack while in a meeting with Looke.

15. Plaintiff told Looke she was having a panic attack.

16. Around that time, Looke told Plaintiff that if she had anxiety, she may not be a good fit for the role.

17. Later that day, Plaintiff told HR that she had a panic attack in Looke's office.

18. On or around January 30, 2026, Plaintiff had a meeting with Looke and an HR representative.

19. In that meeting, HR pointed out to Looke that anxiety and panic attacks constitute protected disabilities that the company would need to be mindful of.

20. On information and belief, Looke did not know before this meeting that Plaintiff's mental health conditions were protected under the ADA.

21. On or around February 4, 2026, less than one week after the meeting with HR, Defendant presented Plaintiff with a performance improvement plan ("PIP").

22. Plaintiff pointed out that the PIP contained a number of inaccuracies. Looke decided not to give it to her that day, and instead decided to revise the document.

23. On February 5, based on discussions with her therapist, Plaintiff requested medical leave under the FMLA, to begin on February 16, to address her rising anxiety and related symptoms.

24. On February 7, after she suffered another panic attack and as a result of her rising anxiety, Plaintiff requested that her leave start date be accelerated to February 8, and that she be given two weeks of leave so she would have more time to work with her therapist.

25. Plaintiff took off work for FMLA leave from February 8 to February 22, 2026.

26. On February 23, Plaintiff's supervisor assigned her a huge backlog of work from when she was away, and he issued her a write-up for something that had occurred on February 6, the day before her leave.

27. Notably, on February 6, Looke had described the incident that was now the subject of Plaintiff's write-up as an error involving multiple individuals.

28. On February 23 when Plaintiff returned from leave, Looke had seemingly changed his characterization of the incident to place the entire blame on Plaintiff.

29. Additionally on February 23, Looke presented Plaintiff with a revised PIP.

30. On or around February 25, 2026, , Plaintiff spoke with HR about her concerns that her supervisor was discriminating against her based on her mental health conditions and her need for protected medical leave, and told HR that she did not feel like she could go to Looke for support

31. Plaintiff's initial impression from her meeting with HR was that her concerns about retaliation and discrimination were being dismissed.

32. Around February 27, HR did open an investigation into Plaintiff's reports of discriminatory conduct.

33. A couple weeks later, in early March 2026, Plaintiff requested reassignment to a different supervisor because of the persistent disability- and protected-leave-related mistreatment she was experiencing from her supervisor.

34. Two days after her request, HR told Plaintiff the company was denying her request for reassignment and closing its investigation.

35. After further discussion, HR ultimately told Plaintiff they would develop a plan for her to temporarily report to another manager.

36. The next day, before any reassignment plan was implemented, Plaintiff's employment was terminated.

37. ***Exhaustion of Administrative Remedies***. On April 9, 2026, Plaintiff filed a Charge of Discrimination with the EEOC on her claims of disability discrimination and retaliation under the ADA.

38. On October 6, 2026, the EEOC issued Plaintiff a Notice of Right to Sue on her claims.

## COUNT I – RETALIATION (ADA)

39. Plaintiff incorporates the allegations above as if fully set forth herein.

40. Plaintiff is a former employee of Defendant who is entitled to the rights and protections of the ADA.

41. Plaintiff engaged in protected activity under the ADA when she requested and took medical leave to address her disability, and when she reported to HR her good faith belief that her supervisor was discriminating against her because of her disability and her need for medical leave.

42. Shortly after Plaintiff's protected activity, Defendant terminated Plaintiff's employment.

43. The circumstances surrounding Plaintiff's termination, including: the timing relative to her protected activity; her supervisor's lack of knowledge that her disabilities were protected until shortly before he issued her a PIP; and her supervisor's suggestion that her mental

health conditions made her a bad fit for the job, create an inference that Defendant's termination of Plaintiff's employment was carried out because of and in retaliation for her protected activity.

44. Defendant's retaliatory conduct has directly and proximately caused Plaintiff to suffer damages, including lost wages and benefits, garden variety mental and emotional distress, humiliation, embarrassment, and frustration.

45. Defendant's retaliatory conduct was done with malice and reckless indifference to Plaintiff's protected rights, such that Defendant is liable for punitive damages in an amount sufficient to punish and deter it and other employers from engaging in similar conduct.

WHEREFORE, Plaintiff Gabrielle Harper respectfully requests that the Court enter judgment in her favor on Count I and against Defendant Milwaukee Repertory Theater, Inc., for damages to be proven at trial, for pre- and post-judgment interest, for reasonable attorneys' fees and expenses, and for such other and further relief as the Court deems just and proper under the circumstances.

**COUNT II – RETALIATION (ADA)**

46. Plaintiff incorporates the allegations above as if fully set forth herein.

47. Plaintiff is a former employee of Defendant who is entitled to the rights and protections of the ADA.

48. Plaintiff's anxiety, panic attacks, and associated mental health conditions constitute a disability under the ADA in that they substantially interfere with her major life activity of working.

49. Defendant terminated Plaintiff's employment.

50. The circumstances surrounding Plaintiff's termination, including the timing relative to Defendant's supervisor learning her disability was protected under the ADA, the timing

relative to her protected disability leave, and her supervisor's suggestion that if she had anxiety she may not be a good fit to work for Defendant, create an inference that Defendant terminated Plaintiff's employment because of her disability in violation of the ADA.

51. Defendant's discriminatory conduct has directly and proximately caused Plaintiff to suffer damages, including lost wages and benefits, garden variety mental and emotional distress, humiliation, embarrassment, and frustration.

52. Defendant's discriminatory conduct was done with malice and reckless indifference to Plaintiff's protected rights, such that Defendant is liable for punitive damages in an amount sufficient to punish and deter it and other employers from engaging in similar conduct.

WHEREFORE, Plaintiff Gabrielle Harper respectfully requests that the Court enter judgment in her favor on Count II and against Defendant Milwaukee Repertory Theater, Inc., for damages to be proven at trial, for pre- and post-judgment interest, for reasonable attorneys' fees and expenses, and for such other and further relief as the Court deems just and proper under the circumstances.

**COUNT III – RETALIATION (FMLA)**

53. Plaintiff incorporates the allegations above as if fully set forth herein.

54. Plaintiff is a former employee of Defendant who is entitled to the rights and protections of the FMLA.

55. In February 2026, Plaintiff engaged in protected activity under the FMLA when she requested two weeks of FMLA leave to deal with her own serious health condition.

56. In March 2026, about a month after Plaintiff's request for leave, and about two weeks after she returned from FMLA leave, Plaintiff's employment was terminated.

57. The timing and circumstances of Plaintiff's termination, occurring so close in time after her protected leave and after her supervisor suggested that her health condition made her a bad fit for Defendant, create an inference that Defendant's termination of Plaintiff's employment was carried out because of and in retaliation for her protected FMLA leave.

58. Defendant's retaliatory conduct has directly and proximately caused Plaintiff to suffer damages, including lost wages and benefits.

59. Defendant's retaliatory conduct was not done in good faith, such that Defendant is liable for liquidated damages in an amount equal to any award of back pay.

WHEREFORE, Plaintiff Gabrielle Harper respectfully requests that the Court enter judgment in her favor on Count III and against Defendant Milwaukee Repertory Theater, Inc., for damages to be proven at trial, for pre- and post-judgment interest, for reasonable attorneys' fees and expenses, and for such other and further relief as the Court deems just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all causes of action and claims with respect to which they have a right to trial by jury.

Dated: November 18, 2026

**HKM EMPLOYMENT ATTORNEYS LLP**

*/s/ Kevin A. Todd*
Kevin A. Todd, WI No. 1141548
ktodd@hkm.com
790 N. Milwaukee Street, Ste. 314
Milwaukee, WI 53202
404.340.4472